**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYLER CARDOSA, ABRAHAM COHEN, JORGE GONZALEZ on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>PREMIUM MERCHANT FUNDING ONE, LLC; SAM LALLOUZ; and all other related entities and individuals,<br><br>Defendants. | Case No.: 1:26-cv-05429<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs TYLER CARDOSA, ABRAHAM COHEN, JORGE GONZALEZ individually and on behalf of other individuals similarly situated (collectively "Plaintiffs"), upon personal knowledge as to facts pertaining to themselves and on information and belief as to all other matters, by and through their undersigned counsel, Leeds Brown Law, P.C., bring this class and collective action complaint against Defendants PREMIUM MERCHANT FUNDING ONE, LLC; SAM LALLOUZ; and all other related entities and individuals (collectively "Defendants").

**NATURE OF THE ACTION**

1. This is a proposed class action under 29 U.S.C. §§ 206, 207, and 216 of the Fair Labor Standard Act (FLSA), as well as Article 6 and 19 of the New York Labor Law (NYLL) brought on behalf of employees of Defendants that performed work without proper wage and commission compensation, including minimum wage and overtime.

2. Defendant Premium Merchant Funding One, LLC (hereinafter "Defendant PMF" or "PMF") is an alternative financing company that services nontraditional funding solutions to small business owners, including merchant cash advances, working capital loans, lines of credit,

equipment financing, and SBA-related financing products.[1] PMF services business nationwide, maintaining their corporate office on Wall Street and has twenty offices worldwide.[2]

3. PMF boasts that, since its inception, it has successfully provided $2 billion in small business financing and $1 billion in merchant cash advances.[3]

4. In order to achieve these figures, PMF employs and exercises control over approximately "500+ funding specialists" to connect with prospective clients and business owners seeking out financial services and products.[4]

5. PMF's job advertisements often highlight team-work, transparency, passion, and their work place culture. For instance, on PMF's job posting for their "Entry Level Sales Representative" position, PMF states that the prospective employee would "…be on the front lines, building relationships with business owners, understanding their needs, and helping them unlock funding that can change the course of their business. This opportunity is designed for self-starters who want the freedom to directly impact their income through performance."[5]

6. Although PMF represented to applicants that they would exercise autonomy over their work and that their compensation depended on how hard they "hustle,"[6] Defendants exercised substantial and exhaustive control over Plaintiffs' and similarly situated workers' day-to-day activities, including supervising work performance, directing sales practices, requiring in-person attendance from Monday to Friday, and monitoring productivity. These policies and requirements were memorialized into internal documents like the "Premium Merchant Funding Training Manual," which dictated granular details to workers like Plaintiffs.

---

[1] https://www.pmfus.com/solutions/ (last accessed June 3, 2026)
[2] https://www.pmfus.com/careers/ (last accessed June 3, 2026)
[3] https://www.pmfus.com/ (last accessed June 3, 2026)
[4] *Id.*
[5] https://jobs.workable.com/view/gNKvZTLa5PkhKxYoGtSCB5/entry-level-sales-representative-in-new-york-at-premium-merchant-funding (last accessed June 3, 2026)
[6] *Id.*

7. Despite this level of control, Defendants misclassified Plaintiffs and similarly situated workers as independent contractors while treating them as full-time employees and compensating them primarily or solely through commissions.

8. PMF's own job postings further demonstrate the degree of control it exercised over its workforce. In advertising for sales positions, PMF represented that workers would be expected to work "10-14 hour shifts" from its office, conduct "300+ proactive outreach efforts daily," meet ambitious sales targets, collaborate with PMF's sales and marketing teams, and participate in company-provided training.[7] These requirements reflect that PMF dictated workers' schedules, imposed productivity quotas, required in-person attendance, directed the manner and means by which work was performed, and closely supervised workers' day-to-day activities. Such requirements are inconsistent with PMF's classification of Plaintiffs and similarly situated workers as independent contractors.

9. Beginning in approximately May 2019, and continuing through the present upon information and belief, Defendants unlawfully withheld wages from Plaintiffs and similarly situated individuals who worked for Defendants selling, marketing, or training to sell financial services and products.

10. During this period, Defendants improperly treated Plaintiffs and similarly situated workers as exempt from minimum wage and overtime requirements by misclassifying them as independent contractors and compensating them primarily or solely on a commission basis.

11. Plaintiffs and similarly situated workers regularly worked in excess of forty hours per week without receiving lawful overtime compensation. Plaintiffs frequently worked long

[7] https://www.linkedin.com/jobs/search/?currentJobId=4423990614&f_C=10321790&originToLandingJobPostings=4423990614&trk=d_flagship3_company (last accessed June 3, 2026)

hours, including work weeks exceeding forty hours, without receiving lawful minimum wages or overtime compensation for all hours worked.

12. Plaintiffs and similarly situated workers were not properly compensated for many of the hours they worked, in violation of the FLSA, the NYLL, and the implementing regulations of the Miscellaneous Wage Order, including by Defendants' practice of compensating workers solely through commissions without ensuring compliance with minimum wage and overtime requirements.

13. Defendants also made unlawful deductions from Plaintiffs' and similarly situated workers' compensation by requiring them to bear ordinary business expenses, including the costs of phones and other work-related expenses that should have been borne by Defendants.

14. Pursuant to Articles 6 and 19 of the NYLL, Plaintiffs, on behalf of themselves and similarly situated employees who performed work for Defendants, seeks unpaid wages, minimum wages for all hours worked, overtime compensation for all hours worked in excess of forty in a workweek, unpaid commissions, interest, attorneys' fees, costs, and all other available relief.

15. Plaintiffs also seek statutory damages and additional amounts owed under NYLL §§ 195 and 198, including for Defendants' failure to provide wage theft notices at the time of hire and accurate wage statements during the course of employment.

16. Defendants engaged in a policy and practice of: (1) failing to pay minimum wages; (2) failing to pay overtime compensation; (3) failing to timely and fully pay earned commissions; (4) failing to provide wage theft notices; and (5) failing to provide accurate wage statements in violation of the FLSA, the NYLL, and the implementing regulations promulgated thereunder.

17. Accordingly, Plaintiffs bring this action on behalf of themselves and all similarly situated employees seeking unpaid minimum wages, overtime compensation, unpaid

commissions, statutory damages, liquidated damages, interest, attorneys' fees, costs, and all other relief available under the FLSA and NYLL.

**JURISDICTION AND VENUE**

18. This Court has personal jurisdiction over Defendants pursuant to FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §1331 and 1337. This court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under the New York Labor Law.

19. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendants' hold its principle place of business in this District as defined in 28 U.S.C. § 1391(c).

**PARTIES**

20. Plaintiff Tyler Cardosa (hereinafter "Plaintiff Cardosa") is an adult individual residing in the state of California. Plaintiff was employed by Defendants from approximately November 2021 to May 2024 at Defendants' Brooklyn office.

21. Plaintiff Abraham Cohen (hereinafter "Plaintiff Cohen") is an adult individual residing in the state of New York. Plaintiff was employed by Defendants from approximately January 2024 to May 2025 at Defendants' Manhattan office.

22. Plaintiff Jorge Gonzalez (hereinafter "Plaintiff Gonzalez") is an adult individual residing in the state of New York. Plaintiff was employed by Defendants from approximately September 2021 to May 2023 at Defendants' Brooklyn and Manhattan office.

23. Upon information and belief, Defendant Premium Merchant Funding is a domestic limited liability company and maintains their headquarters at 55 Water Street, New York, NY 10004.

24. Upon information and belief, Defendant Sam Lallouz (hereinafter "Defendant Lallouz") is the co-founder, owner, chief executive officer, and operator of PMF, and his principal

business address is 55 Water Street, New York, NY 10004.

25. Defendants Lallouz holds himself out as being in charge of the business entity under the Premium Merchant Funding brand, including maintaining a physical presence in the work environment, directing the work performed by the employees, dictating policies that apply to the employees, setting the rates of pay of the employees, and generally overseeing the operations of the business entities on a daily basis.

26. Collectively, Defendants, under the supervision and control of Defendant Lallouz, operate as a joint entity under the umbrella of Premium Merchant Funding.

27. Upon information and belief, Defendant Lallouz employed other similarly situated workers at other business entities that furthered the interests of PMF and acted as subsidiaries or sister companies – with the same pay structure and compensation model to its workers.

28. Defendants maintained control, oversight and direction over the work performed by Plaintiffs. The work performed by Plaintiffs and others similarly situated simultaneously benefited Defendants.

**FACTUAL ALLEGATIONS**

29. Upon information and belief, since approximately 2014[8], Defendants have operated an online small-business financing marketplace and have employed numerous individuals to perform tasks related to selling and marketing Defendants' lending and financial services and products, including merchant cash advances, lines of credit, equipment financing, amongst other services.9

30. In the performance of those services, Defendants employ a staff of cold callers, sale

[8] https://www.pmfus.com/ (last accessed June 3, 2026)
[9] http://pmfus.com/solutions/ (last accessed June 3, 2026)

representatives, and administrative workers under the guise that those workers will receive significant sums of monies in the form of commission payments.

31. During their employment, Plaintiffs were misclassified as independent contractors despite working under Defendants' direction and control. Plaintiffs, and upon information and belief similarly situated workers, were required to meet demanding productivity quotas and regularly worked more than forty hours per week pursuing leads for Defendants' benefit. As a result of Defendants' misclassification of Plaintiffs and similarly situated workers as independent contractors, Defendants failed to pay minimum wages and overtime compensation as required by federal and New York law, thereby depriving Plaintiffs and similarly situated workers of wages to which they were legally entitled.

32. Putative class members were subject to the same payment practices as Plaintiffs.

***Plaintiff Cardosa***

33. From approximately November 2021 through May 2024, Plaintiff Cardosa worked for Defendants as a Sales Representative/Broker in Defendants' Brooklyn office.

34. During his employment, Plaintiff Cardosa was improperly and unlawfully classified by Defendants as an independent contractor despite being treated as an employee and subject to Defendants' direction and control. Plaintiff Cardosa was compensated solely through commissions, which were paid intermittently and without any guaranteed minimum compensation.

35. During his employment, Plaintiff Cardosa was not paid minimum wages for all hours worked and did not receive overtime compensation at the legally required rate for hours worked in excess of forty per week. Rather, from November 2021 to July 2022, Plaintiff Cardosa was compensated solely through commissions and frequently experienced extended periods during which he received no compensation despite continuing to perform work for Defendants. Plaintiff

Cardosa earned commissions only when a deal successfully closed, and any commission earned was subject to division among multiple workers if others assisted in closing the transaction.

36. As a result, Plaintiff Cardosa regularly worked periods of time without receiving any compensation, while nevertheless remaining obligated to report to Defendants' office and perform assigned job duties, including during his first two weeks of work.

37. From August 2022 to May 2024, Plaintiff Cardosa was paid a flat rate of approximately $750-$1000 per week as well as receiving commissions on deals he closed. His commission structure changed from receiving 30 percent of deals closed to 10 percent without written consent or agreement. During this period, he was not paid overtime for all hours worked over 40. He was paid solely his base plus commissions. No overtime compensation was provided at all for hours worked above 40 hours in a given work week.

38. Defendants exercised substantial control over Plaintiff Cardosa's work, including requiring daily in-office attendance, establishing his work schedule, setting performance expectations and sales quotas, monitoring his productivity, directing his sales activities, requiring attendance at meetings, supervising his day-to-day work, and controlling the manner and means by which he performed his duties.

39. Despite classifying Plaintiff Cardosa as an independent contractor, Defendants required Plaintiff Cohen to physically report to Defendants' office on a daily basis and perform his work under the supervision and direction of Defendants' managers – and abide by Defendants' policies and requirements in the performance of his job duties.

40. Plaintiff Cardosa typically worked approximately 47 hours per week. Specifically, Plaintiff Cardosa generally worked from approximately 10 am to 7pm on Mondays and Wednesdays, 10 am to 9 pm on Tuesday and Thursday, and 10 am to 5pm on Fridays.

41. Despite regularly working more than forty hours per week, Plaintiff Cardosa was compensated solely through commissions and did not receive any hourly wages or overtime premium compensation for hours worked in excess of forty in a workweek during the period of November 2021 to July 2022.

42. Defendants provided Plaintiff Cardosa and other similarly situated employees with paystubs that did not reflect the total amount of hours worked, accurate pay rate, and/or commission payments.

43. Defendants failed to provide Plaintiff Cardosa and other similarly situated employees with proper wage notice and paystubs.

***Plaintiff Cohen***

44. From approximately January 2024 through May 2025, Plaintiff Cohen worked for Defendants as a Sales Representative/Broker in Defendants' Manhattan office.

45. During his employment, Plaintiff Cohen was improperly and unlawfully classified by Defendants as an independent contractor despite being treated as an employee and subject to Defendants' extensive and exhaustive direction and control. Plaintiff Cohen was compensated solely through commissions, which were paid intermittently and without any guaranteed minimum compensation.

46. During his employment, Plaintiff Cohen was not paid minimum wages for all hours worked and did not receive overtime compensation at the legally required rate for hours worked in excess of forty per week. Rather, Plaintiff Cohen was compensated solely through commissions and frequently experienced extended periods during which he received no compensation despite continuing to perform work for Defendants. Plaintiff Cohen earned commissions only when a transaction successfully closed, and any commission earned was subject to division among

multiple workers if others assisted in closing the transaction.

47. As a result, Plaintiff Cohen regularly worked periods of time without receiving any compensation, while nevertheless remaining obligated to report to Defendants' office and perform assigned job duties. In fact, Plaintiff Cohen worked the first three weeks without any compensation whatsoever.

48. Defendants exercised substantial control over Plaintiff Cohen's work, including requiring daily in-office attendance, establishing his work schedule, setting performance expectations and sales quotas, monitoring his productivity, directing his sales activities, requiring attendance at meetings, supervising his day-to-day work, and controlling the manner and means by which he performed his duties.

49. Plaintiff Cohen was given and subject to the PMF Training Manual, which dictated specific policies and practices that he was obligated to follow including how to answer questions, how to close deals, words to use and not use, and other granular details that were specific to PMF and its work force.

50. Despite classifying Plaintiff Cohen as an independent contractor, Defendants required Plaintiff Cohen to physically report to Defendants' office on a daily basis and perform his work under the supervision and direction of Defendants' managers.

51. Plaintiff Cohen typically worked approximately 50 hours per week. Specifically, Plaintiff Cohen generally worked Monday through Friday from approximately 9:00 a.m. until 7:00 p.m.

52. Despite regularly working more than forty hours per week (including 10 hours per week typically as overtime), Plaintiff Cohen was compensated solely through commissions and did not receive any hourly wages or overtime premium compensation for hours worked in excess

of forty in a workweek.

53. Defendants provided Plaintiff Cohen and other similarly situated employees with paystubs that did not reflect the total amount of hours worked, accurate pay rate, and/or commission payments.

54. Defendants failed to provide Plaintiff Cohen and other similarly situated employees with proper wage notice and paystubs.

***Plaintiff Gonzalez***

55. From September 2021 through May 2023, Plaintiff Gonzalez worked for Defendants as a Sales Representative in Defendants' Manhattan office.

56. During his employment, Plaintiff Gonzalez was improperly and unlawfully classified by Defendants as an independent contractor despite being treated as an employee and subject to Defendants' direction and control. Plaintiff Gonzalez was compensated solely through commissions, which were paid intermittently and without any guaranteed minimum compensation.

57. During his employment, Plaintiff Gonzalez was not paid minimum wages for all hours worked and did not receive overtime compensation at the legally required rate for hours worked in excess of forty per week. Rather, Plaintiff Gonzalez was compensated solely through commissions and frequently experienced periods during which he received no compensation despite continuing to perform work for Defendants.

58. Plaintiff Gonazlez regularly worked substantial periods of time without receiving any compensation, while nevertheless remaining obligated to report to Defendants' office and perform assigned job duties.

59. Plaintiff Gonzalez's primary duties consisted of contacting prospective customers in an effort to market and sell Defendants' financial services and products. Defendants required

Plaintiff Gonzalez to report to Defendants' office on a daily basis and perform his duties in person.

60. Defendants exercised substantial control over Plaintiff Gonzalez's work, including requiring daily in-office attendance, establishing work schedules, setting performance expectations and quotas, monitoring productivity, directing sales activities, requiring attendance at meetings, supervising day-to-day work, and controlling the manner and means by which Plaintiff Gonzalez performed his duties.

61. Despite classifying Plaintiff Gonzalez as an independent contractor, Defendants required Plaintiff Gonzalez to physically report to Defendants' office on a daily basis and perform work under the supervision and direction of Defendants' managers in the same manner as Defendants' employee workforce.

62. Plaintiff Gonzalez typically worked approximately 47 hours per week. Specifically, Plaintiff Gonzalez generally worked from approximately 10 am to 7pm on Mondays and Wednesdays, 10 am to 9 pm on Tuesday and Thursday, and 10 am to 5pm on Fridays.

63. Despite regularly working more than forty hours per week (including typically 7 hours of overtime work), Plaintiff Gonzalez was compensated solely through commissions and did not receive any hourly wages or overtime premium compensation for hours worked in excess of forty in a workweek.

64. Defendants provided Plaintiff Gonzalez and other similarly situated employees with paystubs that did not reflect the total amount of hours worked, accurate pay rate, and/or commission payments.

65. Defendants failed to provide Plaintiff Gonzalez and other similarly situated employees with proper wage notice and paystubs.

**CLASS AND COLLECTIVE ALLEGATIONS**

66. Plaintiffs bring this matter on behalf of themselves and those similarly situated, pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3), and a collective under § 216(b) as to FLSA minimum wage and overtime claims.

67. This action is brought on behalf of the Plaintiffs and a putative Class consisting of each and every other person who worked for Defendants selling or marketing financial products in any capacity, including but not limited to those classified as financial representatives, interns, broker, representatives, sales associates, trainees, sales trainees, or account managers within the State of New York at locations operated by or on behalf of Defendants, who were compensated at less than $110,000 annually – or other amounts at set by statute, rule, or regulation as a highly compensated and exempt employee.

68. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive and declaratory relief.

69. Plaintiffs may redefine the class as appropriate based on objective materials and information maintained by Defendants that are not known at this time to Plaintiffs and their counsel.

70. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Classes, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

71. Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class members have been damaged and

are entitled to recovery as a result of Defendants' common, uniform, and unfair policies and practices.

72. Numerosity: Class members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are hundreds if not thousands of workers who are Class members as described above who have been damaged by Defendants' misconduct.

73. Commonality: The questions of law and fact common to Class members which predominate over any questions which may affect individual Class members include, but are not limited to:

a. Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

b. Whether Defendants properly compensated Plaintiffs and Class members overtime compensation;

c. Whether Defendants misclassified Plaintiffs and Class members as independent contractors;

d. Whether Defendant provided Plaintiffs and the Class with proper commission payments;

e. Whether Defendants provided Plaintiffs and the Class with proper notice upon hiring, or yearly wage notice, or weekly wage statements; and

f. Whether Defendants provided Plaintiffs and the Class with paystubs.

74. Typicality: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class member in that every member of the Class is asserting the same claims related to the same deceptive and misleading practices. Plaintiffs are entitled to relief under the same causes of action as the other Class members. Plaintiffs and Class members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

75. Adequacy: Plaintiffs are adequate Class representatives because their interests do

not conflict with the interests of Class members they seek to represent; their claims are common to all members of the Class and they have a strong interest in vindicating theirs rights; they have retained counsel competent and experienced in complex class action litigation, and they intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and Class members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

76. The Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to traditional litigation of this controversy. Common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading practices.

77. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia:*

78. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

i. The joinder of hundreds of individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

ii. The individual claims of Class members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive-if not totally impossible-to justify individual actions.

iii. When Defendants' liability has been adjudicated, all Class members' claims can be determined by the Class and administered efficiently

in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

iv. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

v. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

vi. This class action will assure uniformity of decisions among Class members;

vii. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

viii. Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

79. Accordingly, this Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

80. Separate classes may be necessary as to specific factual circumstances or specific claims, including a class for business entities, guarantors, business owners, and other classifications as necessary.

81. Additionally, Plaintiffs are similarly situated to other workers subject to the same pay practices related to overtime and minimum wage and this Court should certify a collective under § 216(b) of the FLSA to include all individuals that worked as brokers, representative, cold-callers, and similar positions that were subject to commission only pay structure.

82. Other collective classes may be appropriate.

**FIRST CAUSE OF ACTION**
**Violation of FLSA – Minimum Wage**

83. Plaintiffs repeat and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

84. Plaintiffs bring this claim individually and on behalf of other members of the putative collective action.

85. Pursuant to 29 U.S.C. § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than -- (A) $5.85 an hour, beginning on the 60th day after May 25, 2007; (B) $6.55 an hour, beginning 12 months after the 60th day; and (C) $7.25 an hour, beginning 24 months after that 60th day [July 24, 2009]."

86. Defendants were "employers" within the meaning of 29 U.S.C. § 203(d), in that Defendants acted directly or indirectly in the interest of Plaintiff and similarly situated employees in relation to their employment.

87. Defendants is an "employer" within the definition under the U.S.C. § 203(d).

88. Plaintiffs and other members of the putative collective action, during all relevant times, engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce.

89. 29 U.S.C. § 213 exempts certain categories of employees from minimum wage obligations.

90. None of these exemptions apply to Plaintiffs or other similarly situated employees.

91. Plaintiffs and similarly situated employees were non-exempt employees and were entitled to receive minimum wages for all hours worked.

92. Defendants violated the FLSA by failing to pay Plaintiffs and similarly situated employees minimum wages for all hours worked.

93. Plaintiffs were not paid any wages at all for extended periods of times between their commission payments.

94. As a result, Plaintiffs went days and weeks without compensation, including minimum wage payments for the hours they worked.

95. Defendants compensated Plaintiffs and similarly situated employees primarily or solely through commissions, without ensuring that their compensation satisfied the minimum wage requirements of the FLSA for each hour worked.

96. Plaintiffs and similarly situated employees frequently worked substantial hours, including workweeks in excess of forty hours, while receiving compensation that fell below the applicable minimum wage for all hours worked.

97. Defendants also failed to maintain accurate records reflecting the total hours worked and wages paid to Plaintiffs and similarly situated employees.

98. Upon information and belief, Defendants' failure to pay lawful minimum wages to Plaintiffs and similarly situated employees was willful within the meaning of the FLSA.

99. As a result of Defendants' unlawful conduct, Plaintiff and similarly situated employees have suffered damages, including unpaid minimum wages, liquidated damages, interest, attorneys' fees, and costs, in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
## Violation of FLSA – Overtime Compensation

100. Plaintiffs repeat and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

101. Plaintiffs bring this claim individually and on behalf of other members of the

putative collective action.

102. Pursuant to 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

103. Defendants is an "employer" within the definition under the U.S.C. § 203(d).

104. Plaintiffs and other members of the putative collective action, during all relevant times, engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for commerce.

105. 29 U.S.C. § 213 exempts certain categories of employees from minimum wage obligations. None of these exemptions apply to Plaintiffs or other similarly situated employees.

106. Defendants violated the FLSA by failing to pay Plaintiffs and other members of the putative collective action overtime wages at a rate of one and one-halftimes the normal rate of pay for all hours worked over 40 in any given week, including when Plaintiffs worked more than 50 hours per week.

107. Plaintiffs regularly worked over 40 hours per week.

108. Specifically, Plaintiff Cardosa would typically work approximately 47 to 50 hours per week.

109. Additionally, Plaintiff Cohen would typically work approximately 50 hours per week.

110. Additionally, Plaintiff Gonzalez typically worked 47 hours per week.

111. Defendants failed to pay any overtime compensation.

112. Defendants paid no premium payments when workers like Plaintiffs worked more than 40 hours per week.

113. Most workers like Plaintiffs typically only received their commission payments.

114. When Defendants did pay some workers with base payments, there was no additional compensation provided when they worked above 40 hours in those work weeks. Thus, Defendants failed to compensated workers at time and one half their regular hourly rate – either the required minimum wage rate at time and one half OR the proper overtime rate based on their commission payments.

115. All commission-based workers like Plaintiffs were wrongfully misclassified as exempt from overtime.

116. Upon information and belief, the failure of Defendants to pay Plaintiffs and other members of the putative collective action their rightfully owed wages was willful.

117. By the foregoing reasons, Defendants are liable to Plaintiffs and members of the putative collective action in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Pay Minimum Wage**

118. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

119. Plaintiffs bring this claim individually and on behalf of all similarly situated Class Members.

120. The New York Labor Law, including Articles 6 and 19, as well as the implementing

regulations, including the Miscellaneous Industries and Occupations Wage Order, require employers to pay employees minimum wage for all hours worked.

121. Defendants were "employers" within the meaning of NYLL § 651(6) and the implementing regulations promulgated thereunder.

122. Defendants jointly operated and controlled PMF and exercised authority over Plaintiff and similarly situated workers, including with respect to hiring, firing, supervision, scheduling, compensation, workplace policies, and the conditions of employment, and are therefore jointly and severally liable as employers.

123. Defendants exercised substantial control over Plaintiffs' and similarly situated workers' employment, including controlling work schedules, directing the manner and means by which work was performed, establishing workplace policies, determining rates and methods of compensation, setting productivity expectations and deadlines, supervising day-to-day work activities, and otherwise maintaining control over the terms and conditions of employment.

124. Plaintiffs were "employee[s]" within the meaning of NYLL § 651(5) and the implementing regulations promulgated thereunder.

125. Plaintiffs, and upon information and belief, other similarly situated employees of Defendants, were not paid minimum wages for all hours worked on behalf of Defendants.

126. Defendants failed to compensate Plaintiffs and similarly situated workers for all hours worked at the applicable hourly minimum wage rate.

127. Instead, Defendants compensated Plaintiffs and similarly situated workers primarily or solely through commissions, without ensuring that such compensation satisfied the minimum wage requirements of the NYLL for every hour worked.

128. Defendants improperly and unlawfully misclassified Plaintiff and similarly situated

workers as independent contractors in order to avoid compliance with New York wage-and-hour laws.

129. As a result of the foregoing, Defendants violated the NYLL and its implementing regulations and are liable to Plaintiffs and similarly situated Class members for unpaid wages, liquidated damages, statutory penalties, pre-judgment and post-judgment interest, attorneys' fees, costs, and disbursements pursuant to NYLL § 198 and other applicable provisions of law.

**FOURTH CAUSE OF ACTION**
**Violation of New York Labor Law – Failure to Pay Overtime**

130. Plaintiffs repeat and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

131. Plaintiffs bring this claim individually and on behalf of Class members.

132. 12 NYCRR § 142-2.2 and other implementing regulations governing Defendants' conduct requires that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate…."

133. Defendants are an "employer" within the definition under the 12 NYCRR § 142-2.2 and the implementing regulations.

134. Plaintiffs were "employee[s]" within the definition under the 12 NYCRR § 142-2.2 and the implementing regulations.

135. Plaintiffs, and upon information and belief, and other putative Class Members, would on occasion, work over forty hours a week while performing work on behalf of Defendants.

136. Plaintiffs regularly worked over 40 hours per week.

137. Specifically, Plaintiff Cardosa would typically work approximately 47 hours per week.

138. Additionally, Plaintiff Cohen would typically work from 9:00 am to approximately

7:00 pm from Monday to Friday, approximately 50 hours per week.

139. Additionally, Plaintiff Gonzalez generally worked from approximately 10 am to 7pm on Mondays and Wednesdays, 10 am to 9 pm on Tuesday and Thursday, and 10 am to 5pm on Fridays, approximately 47 hours per week.

140. Defendants did not pay overtime compensation at one and one-half times his regular hourly rate for all hours worked over 40 in a given week.

141. Defendants failed to pay any overtime compensation.

142. Plaintiffs, and upon information and belief, those individuals similarly situated, did not receive overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in any given week.

143. Defendants did not provide paychecks that accurately reflect the total amount of hours Plaintiffs worked.

144. Plaintiffs were not exempt from overtime pursuant to the Labor Law and the implementing regulations, as Defendants wrongfully classified them and other workers as independent contractors.

145. Consequently, by failing to pay Plaintiffs, and other individuals similarly situated, all their overtime compensation, Defendants violated Labor Law § 663 and 12 NYCRR § 142-2.2.

146. Upon information and belief, Defendants' failure to pay overtime compensation was willful.

## **FIFTH CAUSE OF ACTION**
## **Violation of New York Labor Law – Failure to Pay Commissions**

147. Plaintiffs repeat and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

148. Plaintiffs bring this claim individually and on behalf of Class members.

149. Pursuant to Article 6 of the Labor Law, workers such as Plaintiffs are protected from wage underpayments and improper employment practices, including the failure to provide all earned commissions.

150. Labor Law § 190 et seq. and its implementing regulations, including the Wage Orders, protects workers when they fail to receive all unpaid commissions by underpayments by their employers.

151. According to Labor Law § 191 and the cases interpreting same, workers are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

152. Defendants withheld commissions from Plaintiffs and members of the Class by unilaterally adjusting the commission rate without agreement or by manipulating the commission structure of workers such as to pay other workers, including management or supervisors.

153. Plaintiff Cohen agreed to a commission structure in which he would receive 20% of the deals in which he found a ready, willing, and able buyer.

154. Instead, Defendants failed to compensate him with the 20%, including by adjusting the rate lower, claiming the commission was owed to other workers (i.e. supervisors or managers), or not paying him the commission at all.

155. Plaintiff Gonzalez agreed to a commission structure in which he would receive 30% of the deals in which he found a ready, willing, and able buyer.

156. Instead of honoring that commission agreement, Defendants simply never paid out some of his 120 deals, attempted to claw back commissions after the commission was deemed "earned", or unilaterally reduced his commission without agreement or consent.

157. Plaintiff Cardosa agreed to a commission structure that included 30% to the representative when he found a willing, able, and ready buyer.

158. Instead of honoring that commission agreement, Defendants elected to delay payment such that the Plaintiff did not receive commissions at the time they were "earned" under the Labor Law.

159. Additionally, Plaintiff Cardosa has commission payments that were unilaterally reduced or were incorrectly calculated – including burdening sales representatives with calculating such commissions.

160. Plaintiffs were Commission Salespersons under Article 6 of the Labor Law.

161. Under the Labor Law including Article 6 of the Labor Law, Plaintiffs were owed the commissions at the time they were earned (i.e., at the time they found a ready, willing, and able buyer), but instead were paid at the whims of Defendants at their own terms and at a rate that benefited the PMF and Defendants.

162. Defendants' failure to pay Plaintiffs and the members of the Class is a violation of Labor Law §§ 191, 191-b, 191-c, 193, 195, and 198.

163. By withholding commissions from Plaintiffs and members of the Class, pursuant to Labor Law § 193 and the cases interpreting same, Defendants unlawfully withheld wages.

164. Due to Defendants' violation of the Labor Law, Plaintiff and the Class are entitled to recover from Defendants: an award of damages for their unpaid compensation, liquidated damages, interest, reasonable attorneys' fees and costs, and disbursements of the action, pursuant to the Labor Law § 198.

**SIXTH CAUSE OF ACTION**

**Violation of New York Labor Law – Failure to Provide Wage Statements**

165. Plaintiffs repeat and hereby incorporate each of the above allegations into this cause of action, including the facts described therein.

166. Plaintiffs bring this claim individually and on behalf of Class Members.

167. The Wage Theft Notice Act was passed in the early 2010s to protect employees from wage theft and ensure that adequate records would be kept concerning how employees were paid. Specifically, Labor Law §§ 195 and 198 provides obligations and monetary remedy in instances where the employer fails to provide its employees at the time of hire, and upon change, a written wage notice setting forth the rate of pay and other wage requirements. Further, Labor Law § 195(3) and § 198 provides protection and remedies for employees who do not receive pay stubs with the appropriate information.

168. As stated in Labor Law § 195(1), every employer shall: "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances."

169. In violation of Labor Law § 195(1), Defendants failed to provide Plaintiffs with a written wage notice upon the initiation of their employment.

170. Labor Law § 195(3) requires an employer such as Defendants to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any,

claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked…"

171. According to Labor Law § 198-1 including under subsections 1-b and 1-d, Plaintiffs are entitled to $50.00 for every violation Defendants committed by failing to provide a compliant paycheck or Wage Theft Notice at the time of hiring, or at any point during their employment.

172. Plaintiffs did not receive accurate weekly paystubs or any notice from Defendants on his wages, including any statement that accurately reflected the hours he worked or the number of deductions that were being taken from his wages.

173. Additionally, Plaintiffs and similarly situated workers did not receive commission breakdowns and records that would provide the appropriate calculations and breakdowns on those commissions as wage compensation.

174. For the foregoing reasons, Defendants have violated Labor Law § 195 and § 198 and are liable to Plaintiff and putative Class Members in an amount to be determined at trial, plus interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

(a) For an order certifying the Class and Collective under Federal Rule of Civil Procedure 23(b)(3) and § 216(b) of the FLSA, including by naming Plaintiffs as representatives of the Class and Collective and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b) For an order finding in favor of Plaintiffs, the Class, and Collective on all counts asserted herein;

(c) For actual, compensatory, and putative damages in an amount to be determined by the trier of fact;

(d) For an order of restitution and all other forms of equitable monetary relief;

(e) Awarding Plaintiffs reasonable attorneys' fees, costs, and expenses;

(f) Awarding pre- and post-judgment interest on any amounts awarded; and,

(g) Awarding such other and further relief as may be just and proper including declaratory and injunctive relief.

**DEMAND FOR TRIAL BY JURY**

A jury trial is demanded on all claims so triable.

Dated: June 26, 2026
Carle Place, NY

*/s/ Michael A. Tompkins*
Michael A. Tompkins, Esq.
Anthony Alesandro, Esq.
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, 2nd Floor
Mineola, NY 11501
Tel: 516.873.9550
mtompkins@leedsbrownlaw.com

*Counsel for Plaintiffs and the Proposed Class and Collective*

# *LEEDS BROWN LAW, P.C.*

## CONSENT TO JOIN FORM

I, Tyler Cardosa, consent to be a party plaintiff in a lawsuit against Defendants Premium Merchant Funding One LLC; Sam Lallouz; and all other related entities or individuals, in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 206 and other provisions including § 207.

1. I hereby designate Leeds Brown Law, P.C., to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

2. I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

Dated: 06/11/2026

Tyler Cardosa (Jun 11, 2026 14:19:58 PDT)
Signature

Tyler Cardosa
Printed Name

# *LEEDS BROWN LAW, P.C.*

## CONSENT TO JOIN FORM

I, Abraham Cohen, consent to be a party plaintiff in a lawsuit against Defendants Premium Merchant Funding One LLC; Sam Lallouz; and all other related entities or individuals, in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 206 and other provisions including § 207.

1. I hereby designate Leeds Brown Law, P.C., to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

2. I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

Dated: 06/07/2026

Abraham Cohen (Jun 7, 2026 16:40:11 EDT)
Signature

Abraham Cohen
Printed Name

# *LEEDS BROWN LAW, P.C.*

## CONSENT TO JOIN FORM

I, Jorge Gonzalez ______________, consent to be a party plaintiff in a lawsuit against Defendants Premium Merchant Funding One LLC; Sam Lallouz; and all other related entities or individuals, in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 206 and other provisions including § 207.

1. I hereby designate Leeds Brown Law, P.C., to represent me in bringing such claim, and to make decisions on my behalf concerning the litigation and settlement. I agree to be bound by any adjudication of this action by the Court, whether it is favorable or unfavorable.

2. I also consent to join any other related action against Defendant(s) or other potentially responsible parties to assert my claim and for this Consent Form to be filed in any such action.

Dated: 06/11/2026

Jorge G Gonzalez
Signature

Jorge Gonzalez
Printed Name